# EXHIBIT A

Filer Selected Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

For updated information about your case, including hearings, subseq
and other case information, please visit our Online Case Search
and search for your case: https://casesearch.cookcountyclerkofcourt.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
1/28/2026 10:18 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH00820
Calendar, 9
36387796

| | |
|---|---|
| S.A.I.L., LLC and AMERICASH LOANS OF MISSOURI, L.L.C., | ) ) ) |
| Plaintiffs, | ) ) |
| FORTEGRA SPECIALITY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

Case No.  **2026CH00820**

## COMPLAINT

Plaintiffs, S.A.I.L., LLC and AmeriCash Loans of Missouri, L.L.C. ("Plaintiffs"), by their counsel, Grady Bell LLP, complain against Fortegra Specialty Insurance Company ("Defendant") as follows:

1.     Plaintiff S.A.I.L., LLC ("SAIL") is a named insured under an insurance policy issued by Defendant as number RCB-100063-00 (the "Policy") with a policy period of November 20, 2022 to November 20, 2023 (the "Policy Period").  A true and accurate copy of the Policy is attached as "Exhibit A" to this complaint.

2.     At all relevant times, Plaintiff AmeriCash Loans of Missouri, L.L.C. ("AmeriCash") has been a wholly-owned subsidiary of AmeriCash Holding, L.L.C., which is a named insured under the Policy.

3.     Among other things, the "Employment Practices Liability Insuring Agreement" of the Policy requires Defendant to defend and indemnify Plaintiffs against claims of "Wrongful Employment Acts" (as defined in the Policy) which Plaintiffs report to Defendant during the Policy Period.

1

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

4.      The Policy, as amended, defines "Wrongful Employment Acts" as follows (bold in original):

> **Wrongful Employment Acts** means any of the following, whether actual or alleged, and claimed by or on behalf of an existing or former **Employee** or an applicant for employment resulting from employment-related discrimination, harassment, wrongful termination, retaliation, defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity, or any other violation of common or statutory law relating to employment, with the exception of those certain laws identified in the **Violation of Certain Employment Laws Exclusion**.

5.      On or about June 28, 2023, Lisa Phillips, filed a Charge of Discrimination with the Equal Opportunity Employment Commission and the Missouri Commission on Human Rights against Plaintiffs based on gender discrimination and retaliation (the "Phillips Charge"). A true and accurate copy of the Phillips Charge is attached to this complaint as "Exhibit B."

6.      The Phillips Charge alleged that Plaintiffs committed one or more Wrongful Employment Acts, as the Policy, as amended, defines that term. Among other things, the Phillips Charge alleged that Plaintiffs (i) unlawfully terminated her employment in violation of anti-discrimination laws, including the Missouri Human Rights Act and Title VII of the Civil Rights Act of 1964, and (ii) retaliated against her for engaging in the protected activity of raising gender-based pay discrepancies to Plaintiffs' leadership, including by terminating her employment.

7.      By no later than July 17, 2023, Plaintiffs provided Defendant with written notice of the Phillips Claim by, among other things, tendering their defense, providing Defendant with a copy of the Charge of Discrimination, and by requesting that Defendant accept coverage of the Phillips Charge and defend Plaintiffs.

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

8.      In spite of the express terms of the Policy which required Defendant to accept Plaintiffs' tender of its defense and provide coverage of the Phillips Charge, Defendant denied coverage of the Phillips Charge in its entirety.

9.      On or about April 29, 2024, Phillips filed a lawsuit against Plaintiffs in the Circuit Court of St. Louis County, Missouri, alleging the same gender discrimination and retaliation alleged in the Phillips Charge (the "Phillips Lawsuit.") A copy of the Phillips Lawsuit is attached to this complaint as "Exhibit C."

10.      On or about May 1, 2024, Plaintiffs gave Defendant written notice of the Phillips Lawsuit by, among other things, providing Defendant with a copy of the Phillips Lawsuit and by repeating its request that Defendant accept coverage of Phillips' claims and defend Plaintiffs.

11.      In spite of the express terms of the Policy which required Defendant to accept Plaintiffs' tender of its defense coverage of the Phillips Lawsuit, Defendant denied coverage of the Phillips Lawsuit in its entirety and refused to defend Plaintiffs.

12.      Defendant's wrongful coverage denials breached the Policy and forced Plaintiffs to incur the attorney's fees and costs necessary to defend themselves against the Phillips Charge and the Phillips Lawsuit.

13.      Plaintiffs removed the Phillips Lawsuit to federal court in Missouri and the case proceeded to a jury trial on November 3, 2025. On November 5, 2025, a jury found in Plaintiffs' favor and against Phillps on all counts of the Phillips Lawsuit. The federal court entered judgment in Plaintiff's favor thereafter. Phillips did not file a notice of appeal.

14.      Plaintiffs incurred in excess of $310,000 in attorney's fees and litigation expenses to successfully defend themselves against the Phillips Charge and the Phillips Lawsuit.

## COUNT I - BREACH OF CONTRACT

15.      Plaintiffs incorporates Paragraphs 1-14.

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

16.     Plaintiffs fully performed all of their obligations under the Policy.

17.     Defendant's denial of coverage of the Phillips Charge and the Phillips Lawsuit breached the terms of the Policy.

18.     Defendant's breach of the Policy damaged Plaintiffs in the amount of their necessary defense fees and costs which exceeded $310,000.

19.     Plaintiffs repeatedly demanded that Defendant perform its obligations under the Policy by providing Plaintiffs with a defense against the Phillips Charge and Phillips Lawsuit, but Defendant repeatedly refused.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant in amount to be determined at trial but which will be in excess of $310,000, plus costs, and for any other relief the Court deems appropriate.

## COUNT II – VIOLATION OF SECTION 155 OF THE ILLINOIS INSURANCE CODE

20.     Plaintiffs incorporate Paragraphs 1-19.

21.     This complaint against Defendant is an action wherein there is at issue the liability of Defendant to Plaintiffs for damages sustained by Plaintiffs arising from Defendant's failure to defend Plaintiffs in the Phillips Charge and Phillips Lawsuit, which satisfies a condition under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

22.     Plaintiffs would not have filed this action but for Defendant's unreasonable and vexatious conduct in refusing to defend Plaintiffs and/or pay for Plaintiffs' defense of the Phillips Charge and Phillips Lawsuit.

23.     As a result of the wrongful conduct of Defendant in violation of Section 155 of the Illinois Insurance Code, Plaintiffs are entitled to recover their attorney's fees incurred in the preparation and prosecution of this complaint, plus an amount not to exceed 60 percent of the

4

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

amount which this Court determines that Plaintiffs are entitled to recover against Defendant, exclusive of all costs, or, in the alternative, the statutory amount of $60,000.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant in an amount equal to attorney's fees Plaintiffs incur in the preparation and prosecution of this complaint, plus sixty percent of any amount which this Court deems that Plaintiffs are entitled to recover against Defendant under the Policy, or in the alternative, a statutory amount of $60,000, plus any other relief the Court deems appropriate.

Respectfully submitted,

**S.A.I.L., LLC and**
**AMERICASH LOANS OF MISSOURI, L.L.C.**

By: /s/ *John F. Grady*
        One of Their Attorneys

John F. Grady
Grady Bell LLP
53 West Jackson Blvd., Suite 1062
Chicago, Illinois 60604
Phone: (312) 735-0886
jgrady@gradybell.com
FIRM ID: 56243

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

# EXHIBIT A

FILED DATE: 1/28/2026 10:18 AM   2026CH00820



**AmeriCash Holding, LLC / Creditbox.com / S.A.I.L. LLC**
**2400 E Devon Ave. Ste. 300**
**Des Plains, IL 60018**

# Commercial lines
# Insurance policy

Coverage afforded by this policy is provided
by the Company named in the Declarations.

Home office:                                   Program administrator office:

Fortegra Specialty Insurance Company           I

10751 Deerwood Park Blvd, Suite 200,           Claims reporting phone number:

Jacksonville, FL 32256                         Claims reporting email address:

Customer service phone number: 800-888-2738

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

# INSURED PERSONS LIABILITY AND
# COMPANY INDEMNIFICATION POLICY
## Declarations

**Policy Number: RCB-1000063-00**

**IMPORTANT NOTICE:** **This is a claims-made and reported policy. Defense Costs are included within the Limit of Liability. Amounts incurred as Defense Costs will reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully.**

**Item 1.**  **Named Insured(s):**  **AmeriCash Holding, LLC / Creditbox.com / S.A.I.L. LLC**

**Principal Office:**  **2400 E Devon Ave. Ste. 300**

**Des Plains, IL 60018**

**Item 2.**  **Policy Period:**  From 12:01 a.m. **11/20/2022** to **11/20/2023** 12:01 a.m.
(Local time at the address shown in Item 1)

**Item 3.**  **Total Policy Limit:** The Total Policy Limit for each **Policy Period** for all Insuring Agreements, regardless of whether such Insuring Agreement is provided as a sublimit or separate limit, shall not exceed **$4,000,000**

**Item 4.**  **Discovery Period:** If the eligibility requirements are met and the Discovery Period is properly exercised, the **Insured** shall pay **100% of the annual premium** for each of the Insuring Agreements set forth in Item 11(a). The length of the Discovery Period shall be 12 months.

**Item 5.**  **Notices:** All notices required to be given to the **Insurer** under this **Policy** shall be addressed to: **Bill Hess. E-Mail:bill@cbcunderwriters.com Telephone:931-308-7171.**

**Item 6.**  **Defense Arrangements:** It shall be the duty of the **Insured** and not the duty of the **Insurer** to defend **Claims** unless the "Insurer's Duty to Defend" is designated "yes" below:

| | Insuring Agreement | Insurer's Duty To |
|---|---|---|
| **Defend** | | |
| | Insured Persons Liability/Company Indemnification | No |
| | Bankers Professional Liability | No |
| | Brokerage Services Liability | No |
| | Depositor Liability | No |
| | Employment Practices Liability | Yes |
| | Fiduciary Liability/Voluntary Correction Program ("VCP") | Yes |
| | Insurance Services Liability | No |
| | Trust Services Liability | No |
| | IRA/Keogh Liability | No |
| | Lender Liability | Yes |
| | Privacy Liability/Privacy Liability Mitigation Expense ("PLME") | No |

Premium: $61,883
Surplus Line Tax 2,166
Stamping Fee   46
Service Fee: $500
Sup Fee: $500

*Samuel Carson*

FSIC CBP DEC 02 22

Page 1 of 3

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

Securities Liability                                                                    No

**Item 7.**     **Coverage(s) Provided:** It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability, Retention, and premium for such Insuring Agreement is set forth below:

| Insuring Agreements | Item 8 "X" Indicates Separate Limit | Item 9 Maximum Limit of Liability | Item 10 Retention | Item 11(a) Annual Premium | Item 11(b) Actual Premium |
|---|---|---|---|---|---|
| **Insured Persons Liability/Company Indemnification Policy** | X | $1,000,000 | | $17,516 | $17,516 |
| (A) Insured Persons Liability | | | $0 | | |
| (B) Company Indemnification | | | $25,000 | | |
| | | | | | |
| **Optional Additional Insuring Agreements:** | | | | | |
| Bankers Professional Liability | X | $1,000,000 | $25,000 | $14,852 | $14,852 |
| Brokerage Services Liability | | N/A | N/A | | |
| Depositor Liability | | N/A | N/A | | |
| Employment Practices Liability | X | $1,000,000 | $25,000 | $16,522 | $16,522 |
| Fiduciary Liability (Incl. VCP Sublimit) | | N/A | N/A | | |
| Insurance Services Liability | | N/A | N/A | | |
| Trust Services Liability | | N/A | N/A | | |
| IRA/Keogh Liability | | N/A | N/A | | |
| Lender Liability | X | $1,000,000 | $25,000 | $12,993 | $12,993 |
| Privacy Liability (Incl. PLME Sublimit) | | N/A | N/A | | |
| Securities Liability | | N/A | N/A | | |

**Item 12.**    **IRA/Keogh Liability Retention:** This Retention shall only apply to the extent any **Claim** under the optional IRA/Keogh Liability Insuring Agreement involves an IRA or Keogh Plan not in the custody or control of any Trust Department or Trust **Subsidiary** of the **Company.**

**Item 13.**    **Prior/Pending Litigation Dates:**

| Insuring Agreement | Dates |
|---|---|
| Insured Persons Liability/Company Indemnification | 11/20/2022 |
| Bankers Professional Liability | 11/20/2022 |
| Brokerage Services Liability | N/A |
| Depositor Liability | N/A |
| Employment Practices Liability | 11/20/2022 |
| Fiduciary Liability/Voluntary Correction Program | N/A |
| Insurance Services Liability | N/A |

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

| | |
|---|---|
| Trust Services Liability | **N/A** |
| IRA/Keogh Liability | **N/A** |
| Lender Liability | **11/20/2022** |
| Privacy Liability/Privacy Liability Mitigation Expense | **N/A** |
| Securities Liability | **N/A** |

**Item 14.**   **Persons designated to accept Service of Suit on behalf of the Insurer:**

           **See attached Services of Suit.**

**Item 15.**   **Endorsements:** This **Policy** is subject to the terms of the following Endorsements attached hereto and incorporated herein by reference at the effective date of this **Policy** and to all other Endorsements attached hereto after the effective date of this **Policy:**

1. **FBP Jacket 08 16**
2. **FSIC CBP DEC 02 22 Insured Persons Liability and Company Indemnification Policy Declarations**
3. **FSIC CBP POL 03 02 22 INSURED PERSONS LIABILITY AND COMPANY INDEMNIFICATION POLICY**
4. **AMENDED PRIOR KNOWLEDGE/NOTICE/LITIGATION/CLAIM EXCLUSION**
5. **BANKERS PROFESSIONAL LIABILITY INSURING AGREEMENT**
6. **EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT**
7. **LENDER LIABILITY INSURING AGREEMENT**
8. **SOS - All States except (CA -FL-WA & TX) 11-20**
9. **REGULATORY AUTHORITY EXCLUSION**

These Declarations, along with the completed and signed **Application**, including attachments, the **Policy** and all Endorsements hereto, shall constitute the contract between the **Insured** and **Insurer.**

FILED DATE: 1/28/2026 10:18 AM  2026CH00820



# FORTEGRA®

## FORTEGRA SPECIALTY INSURANCE COMPANY
## INSURED PERSONS LIABILITY AND
## COMPANY INDEMNIFICATION POLICY

| | |
|---|---|
| **Policy Number: RCB-1000063-00** | |
| **Insured Name: AmeriCash Holding, LLC / Creditbox.com / S.A.I.L. LLC** | |

**IMPORTANT NOTICE: This is a claims-made and reported policy. Defense Costs are included within the Limit of Liability. Amounts incurred as Defense Costs will reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully.**

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insureds** agree that coverage will be provided subject to all of the terms, conditions and limitations of this **Policy**, as follows:

## SECTION I - INSURING AGREEMENTS

It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability, Retention and premium for such Insuring Agreement are set forth in the Declarations.

A.     **INSURED PERSONS LIABILITY -** The **Insurer** will pay on behalf of the **Insured Persons** for their **Loss** resulting from **Claims** first made during the **Policy Period** against the **Insured Persons** for **Wrongful Acts**, except for **Loss** the **Company** pays as indemnification of the **Insured Persons**, which **Claims** are reported to the **Insurer** during the **Policy Period** (or the Discovery Period if purchased).

B.     **COMPANY INDEMNIFICATION -** The **Insurer** will pay on behalf of the **Company** for its **Loss** resulting from **Claims** first made during the **Policy Period** against the **Insured Persons** for **Wrongful Acts** for which the **Company** has agreed, or is legally permitted or required by law, to indemnify the **Insured Persons**, which **Claims** are reported to the **Insurer** during the **Policy Period** (or the Discovery Period if purchased).

## SECTION II - ADDITIONAL COVERAGES

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**A.     ESTATES, HEIRS AND MARITAL ESTATE LIABILITY - This Policy shall pay Loss resulting from Claims for Wrongful Acts of an Insured Person made against:**

(1) the estates, heirs, legal representatives or assigns of any **Insured Persons** who are deceased, incompetent, insolvent or bankrupt, provided that such **Claims** would have been covered by this **Policy** in the absence of such death, incompetency, insolvency or bankruptcy of such **Insured Person**; and

(2) the lawful spouse of an **Insured Person** solely by reason of such individual's status as the spouse of the Insured Person, or such spouse's joint ownership interest in property with the **Insured Person** which the claimant seeks as recovery in a **Claim** against such **Insured Person**, provided that such **Claim** would have otherwise been covered by this **Policy**.

The coverage provided by this Subsection shall not apply with respect to any loss arising from any act, error or omission by an **Insured Person's** estate, heirs, legal representatives, assigns or spouse.

**B.     NOT-FOR-PROFIT DIRECTORSHIPS - This Policy shall pay Loss resulting from Claims for Wrongful Acts of Insured Persons while serving on the board of directors or board of trustees of any not-for-profit entity at the direction of the Company; provided, however, that (1) such Claim would is otherwise covered by this Policy, and (2) such coverage shall be excess over any other insurance or indemnification provided to the Insured Persons.**

## SECTION III - DISCOVERY PERIOD

**A.** If the **Company** or the **Insurer** cancels or non-renews this **Policy**, or if the **Policy** is the subject of a conversion pursuant to Section XIIC.(1)(b), the **Insured** shall have the right to purchase an optional  Discovery Period for the period set forth in Item 4 of the Declarations. It is understood and agreed that if the **Insurer** cancels this **Policy** due to nonpayment of premium, the **Insured** shall not be entitled to purchase the Discovery Period.

**B.** The Discovery Period is not an extension of coverage, but rather an extended period for the **Insured** to report **Claims** first made during the **Policy Period** resulting from **Wrongful Acts** that occurred prior to the effective date of cancellation, nonrenewal or conversion, and otherwise covered under this **Policy**. Notice of facts and circumstances that may give rise to a **Claim**, pursuant to Section X.B. must be given to the **Insurer** during the **Policy Period** and shall not be effective if given during the Discovery Period.

**C.** If the **Insured** elects to purchase the Discovery Period, the premium will be calculated by multiplying the annual premium set forth in Item 11(a) of the Declarations by the percentage set forth in Item 4 of the Declarations. The Discovery Period is non-cancellable and the entire premium shall be deemed fully earned at its commencement.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**D.** The **Insured's** right to purchase the Discovery Period shall lapse unless the **Insurer** receives written notice of the **Insured's** election and full payment of the additional premium due within thirty (30) days after the effective date of such cancellation, nonrenewal or conversion of the **Policy**.

**E.** The Limit of Liability with respect to **Claims** noticed to the **Insurer** during the Discovery Period shall be part of, not in addition to, nor reinstate the Limit of Liability set forth in Item 9 of the Declarations for all **Claims** made during the **Policy Period**. Any **Claim** noticed during the Discovery Period shall be deemed to have been made during the **Policy Period**.

**F.** The offer by the **Insurer** and acceptance by the **Insured** of a renewal policy under terms, conditions, Limits of Liability, Retentions, or premiums different from those applicable to the expiring **Policy** shall not constitute a refusal by the **Insurer** to renew but the **Insured** shall still have the right to purchase the Discovery Period for the expiring **Policy**.

## SECTION IV - DEFINITIONS

**Application** means:

(1) the application signed for the procurement of this **Policy** and any **Loss Information** and other documentation submitted to the **Insurer** in support of the procurement of this **Policy** or any Policy for which this **Policy** is a direct or indirect renewal or replacement; and

(2) any publicly available information published or filed by or with a recognized source, agency or institution regarding the **Insured** in the five (5) years preceding the **Policy's** inception, and any amendments thereto, whether or not submitted with any signed application.

The **Application** is deemed to be a part of and incorporated into this **Policy**, as if physically attached.

**Brokerage/Advisory Services** means the purchase or sale of mutual funds, annuities, variable annuities, or life, accident or health insurance or securities as defined in the Investment Advisers Act of 1940, as amended, to be transacted through an **Employee** or a third party service provider pursuant to a contract between the **Company** and the service provider. In connection with the foregoing activities, Brokerage/Advisory Services also includes the provision of:

(1) economic advice, financial advice or investment advisory services; and

(1) financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of financial plans or personal financial statements, and the giving of advice with regard to insurance, savings, investments, retirement planning or taxes.

**Brokerage/Advisory Services** shall not include rendering advice with regard to the FDIC-insured component of any deposit account or the sale of credit, life or disability insurance incidental to the issuance of a loan.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**Claim**, either in singular or plural, means any of the following initiated against an **Insured Person** or the **Company**, if coverage for the **Company's Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement:

(1) a written demand for monetary damages or non-monetary relief;

(2) a civil proceeding commenced by the service of a complaint or similar pleading;

(3) a criminal proceeding commenced by a return of an indictment;

(4) an arbitration commenced by a demand for arbitration or similar document in which monetary damages are sought; or

(5) a formal administrative proceeding commenced by a **Private Party** with the filing of a notice of charges or similar document.

**Company** means the **Named Insured**, any **Subsidiary** as of the inception date of the **Policy Period** and, subject to Section XI.B., any **Subsidiary** created or acquired during the **Policy Period**.

**Compensation** means any commissions, payments, fees or any other type of consideration. **Compensation** shall also mean kickbacks, bribes or any other similar types of payments.

**Conversion Event** means:

(1) **Financial Impairment** of the **Company** comprising more than fifty (50%) percent of the **Company's** total assets;

(2) acquisition of the **Company** by another entity or the merger or consolidation of the **Company** into another entity such that the **Company** is not the surviving entity or acquisition of substantially all of the assets of the **Company** by another entity; or

(3) the **Company** ceasing to engage actively in the primary business of the **Named Insured**.

**Defense Costs** means reasonable and necessary legal fees and expenses incurred in defending or investigating any **Claim** and the cost of appeal, attachment or similar bonds (but without any obligation to apply for or furnish any such bonds). **Defense Costs** shall not include salaries, wages, overhead, or benefit expenses incurred by the **Insured**.

**ERISA** means the Employment Retirement Income Security Act of 1974, as amended.

**Employee**, either in singular or plural, means any natural person, other than an independent contractor or **Leased Employee**, who is a past, present or future employee of the **Company** including any part-time, seasonal or temporary employee, acting in their capacity as such.

**Financial Impairment** means the status of the **Company** resulting from:

(1) the appointment by any local, state or federal official, regulatory agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage, liquidate, rehabilitate or reorganize the **Company**; or

(2) the **Company** becoming a debtor-in-possession.

**Insurance Services** means any of the following services for a **Private Party** performed by an **Insured** as insurance agent, insurance broker, insurance consultant or insurance managing general agent:

(1) sale and placement of insurance;

(2) identification, analysis and evaluation of a **Private Party's** insurance needs;

(3) adjustment of claims on behalf of insurance companies, including payment of loss; or

(4) arrangement of premium financing for a **Private Party**.

**Insured**, either in singular or plural, means the **Insured Persons** or the **Company;** if coverage for the **Company's Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement.

**Insured Person**, either in singular or plural, means any past, present or future director, member of the board of trustees, officer, honorary or advisory director, or honorary or advisory member of the board of trustees of the **Company**, and **Employees** if coverage for **Employees' Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement.

**Insurer** means the insurance company that issued this **Policy**.

**Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

**Leased Employee** means any natural person, other than a director or officer, **Employee** or Independent Contractor, who is leased to the **Company** to perform work for the **Company** whether or not the **Company** controls the means and manner of the work performed.

**Loss** means **Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, and pre- and post-judgment interest. **Loss** shall also include punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law. **Loss** shall not include:

(1) taxes;

(2) criminal or civil fines or penalties imposed by law;

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

(3) any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any **Private Party** or any forgiveness of debt;

(4) costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(5) any amounts the **Insured** is obligated to pay pursuant to any express written or oral contract or agreement;

(6) the depreciation in (or failure to appreciate the) value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

(7) any restitution, disgorgement, or similar payments including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(8) any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

**Loss Information** means information on open, closed and potential **Claims**, including date, description, and payment amounts, if any.

**Named Insured** means the first named entity set forth in Item 1 of the Declarations.

**Policy** means collectively, the Declarations, the **Application**, this policy form, any additional Insuring Agreements, and any Endorsements attached hereto.

**Policy Period** means the period from the inception date set forth in Item 2 of the Declarations to the expiration date set forth in Item 2 of the Declarations or any earlier termination date.

**Pollutants** include but are not limited to any solid, liquid, gaseous or thermal organism, irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Private Party**, either in singular or plural, means an individual or entity other than a regulatory, governmental, quasi-regulatory or quasi-governmental agency or body.

**Professional Services** means only those services performed or required to be performed by an **Insured** for, or on behalf of, a customer of the **Company**:

(1) for a fee, commission or other monetary compensation;

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

(2) where a fee, commission or other monetary compensation would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

(3) for other remuneration which inures to the benefit of the **Insured**.

**Subsidiary** means of the following entities that are disclosed to the **Insurer** and approved by the **Insurer** as a **Company**:

(1) any corporation in which the **Named Insured** owns, directly or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors;

(2) any limited liability company in which the **Named Insured**, or one or more of its **Subsidiaries**, has the right to appoint or designate fifty percent (50%) or more of such limited liability company's managers; or

(3) any joint venture in which the **Named Insured**, or one or more of its subsidiaries, has the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors, trustees or other equivalent executives.

**Third-Party Wrongful Act** means any of the following, whether actual or alleged, claimed by or on behalf of an existing or former client, customer, supplier, vendor, patient or business invitee, or any other person not an **Employee** resulting from discrimination, harassment, defamation, failure to enforce policies, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, or wrongful discipline.

**Trust Services** means any of the following services performed by the **Insured** through a Trust **Company,** Trust Department or Trust **Subsidiary** pursuant to authority granted by a regulatory, governmental, quasi-regulatory or quasi-governmental agency or body:

(1) administrator, custodian or trustee under any individual retirement account, or Keogh pension plan;

(2) executor, administrator or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

(3) trustee under a pension, profit sharing, health and welfare or any other employee benefit plan or trust, other than an employee benefit plan or trust sponsored or established by the **Company** for its own **Employees**;

(4) custodian, depository or managing agent for securities or real property, manager of any personal property owned by others, attorney-in-fact, interest or dividend disbursing agent, transfer or paying agent, redemption or subscriptions agent, fiscal agent, tax withholding agent,

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

registrar of securities, agent for voting securities, sinking fund agent, escrow agent or trustee under a corporate bond indenture; or

(5) trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Act**, either in singular or plural, means any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by:

(1) any **Insured Person** while acting solely in the discharge of his or her duties in the capacity as such; or

(2) the **Company**, if coverage for the **Company's Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement.

**Wrongful Employment Acts** means any of the following, whether actual or alleged, and claimed by or on behalf of an existing or former **Employee** or an applicant for employment resulting from employment-related discrimination, harassment, wrongful termination, retaliation, defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, violations of the Uniformed Services Employment and Reemployment Rights Act, violations of the Family Medical Leave Act, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity, or any other violation of any statutory or common law relating to employment.

## SECTION V - EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The following Exclusions are applicable to all **Insureds** under all Insuring Agreements made a part of this **Policy**.

**Bodily/Personal Injury and Property Damage Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible or intangible property including loss of use thereof, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander.

**Brokerage/Advisory Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the rendering or failing to render **Brokerage/Advisory Services**.

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**Collusion Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** by any security holder of the **Company**, whether directly or derivatively, unless such security holder bringing such **Claim** is acting independently of, and totally without the solicitation, assistance, participation, or intervention of any **Insured** or any affiliate of the **Company**.

**Contract Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement, unless such liability would be imposed regardless of the existence of such contract or agreement; or

(2) the intentional breach, in fact, of any express written or oral contract, or amounts the **Company** is obligated to pay pursuant to any express written or oral contract.

**Claw-Back Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any attempt by a **Private Party** to recover from any **Insured Person**, **Employee** or **Company** money, financial instruments, securities or benefits previously distributed to them.

**ERISA Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any pension, profit sharing or employee benefit program established in whole or in part for the benefit of **Employees** of the **Company**, including without limitation, any violation of **ERISA** or similar provisions of any federal, state or local statutory law, common law or administrative law.

**Failure to Maintain Insurance Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any actual or alleged failure to effect or maintain any policy providing insurance for the **Company**.

**Foreclosed Property Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the ownership, operation, management or control of any entity or property acquired by the **Company** as security or collateral for any loan, lease or extension of credit.

**Fraud/Criminal/Willful Violation of Law Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any fraudulent, dishonest or criminal act or any willful violation of any civil or criminal statute, regulation or law by an **Insured, Employee** or **Company**; provided, however, **Defense Costs** shall be paid unless and until a final judgment

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

or adjudication establishes such fraudulent, dishonest, criminal act or willful violation of statute, regulation or law.

**Illegal Profit/Claw-Back/Payment/Conflicts Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) any **Insured Person**, **Employee** or **Company** gaining any profit, remuneration, or financial advantage to which they were not legally entitled;

(2) payment by the **Company** of inadequate or excessive consideration in connection with its purchase of **Company** securities; or

(3) conflicts of interest, engaging in self-dealing, acting in bad faith or breaching any covenants of good faith and fair dealing on the part of any **Insured Person**, **Employee** or **Company**;

provided, however, **Defense Costs** shall be paid unless and until evidence in fact establishes such conduct set forth at (1), (2) or (3) of this Exclusion.

**Improper Solicitation Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) improper solicitation or receipt of any excessive, additional, undisclosed, improper or illegal Compensation relating to an offering of the Company's securities, or Compensation greater than that disclosed in the prospectus or registration statement relating to such offering;

(2) improper solicitations or agreements, whether express or implied, relating to any offering of the Company's securities including but not limited to solicitations or tie-in agreements to purchase (i) additional shares of the Company's securities at a pre-determined price, or (ii) shares of another company's securities; or

(3) Violation of any rule or law of required or prohibited conduct governing such Compensation or offering as set forth at (1) and (2) of this Exclusion.

**Insured vs. Insured Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** by, on behalf of, at the behest of, or for the benefit of, the **Company**, any affiliate of the **Company** or any **Insured Person** in any capacity except where such **Claim** is brought and maintained:

(1) in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of the Policy;

(2) by an Insured Person or Employee solely as a customer of the Company; provided, however, such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any other Insured; or

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

(3) by a security holder of the Company as a derivative action on behalf of the Company or such affiliate; provided, however, such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any Insured or any affiliate of the Company.

**Internet/Electronic Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) internet banking or electronic banking;

(2) website development, software development or network security services to third parties; or

(3) hosting services or services as an Internet Service Provider, Internet Access Provider, Application Service Provider or provider of similar services.

**Pollution Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of **Pollutants**; or

(2) any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or to pay for or contribute to the costs of undertaking such actions, including **Claims** alleging damage to the **Company** or its security holders.

**Post-Conversion Event** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any **Wrongful Act** subsequent to a **Conversion Event.**

**Prior Knowledge/Notice/Litigation/Claim Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) facts or circumstances of which any **Insured Person** or **Employee** had knowledge of, and which any **Insured Person** or **Employee** could reasonably foresee might result in a **Claim** prior to the inception date of the **Policy Period**;

(2) **Wrongful Act**, or any **Wrongful Act** which is part of any **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice given to any insurer other than the **Insurer** under any similar insurance policy providing protection for any **Insured**; or

(3) any litigation or **Claim** against any **Insured**, **Employee** or **Company** initiated prior to the date set forth in Item 13 of the Declarations, or any subsequent litigation or **Claim**, based

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

upon, arising out of, resulting from, related to, or in any way involving the same or substantially the same fact, circumstance or situation underlying such prior litigation or **Claim**.

**Short-Swing Profit Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly arising out of or in any way involving an accounting of profits made from the purchase and sale, or sale and purchase, of **Company** securities by the **Insured Persons** or **Employees** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, as amended, or similar provisions of any state statutory law or common law.

**Not As Subsidiary Wrongful Acts Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** against any **Subsidiary** or its **Insured Persons** acting in the capacity of director, member of the board of trustees, officer or **Employee** of such **Subsidiary** for any **Wrongful Act committed** in whole or in part at any time when such entity was not a **Subsidiary**, or any **Wrongful Act** committed in whole or in part when such entity was a **Subsidiary** which is part of any **Interrelated Wrongful Acts** committed in whole or in part at any time when such entity was not a **Subsidiary**.

**Third-Party Wrongful Act Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving **Third-Party Wrongful Acts**.

**Trust Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the rendering or failing to render **Trust Services**.

**Violation of Certain Employment Laws Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of, or in any way directly or indirectly involving an actual or alleged violation of the responsibilities, obligations or duties imposed by the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, any Worker's Compensation, Unemployment Insurance, or disability benefits law, the Fair Labor Standards Act, or any other laws governing the wages, hours and breaks afforded **Employees** and other workers for the **Company**, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, or any rules or regulations promulgated under any of the above statutes, or similar provisions of any federal, state or local statutory, administrative or common law.

**Wrongful Employment Acts Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving **Wrongful Employment Acts**.

**Wrongful Insurance Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the rendering or failing to render **Insurance Services**;

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

provided, however, this exclusion shall not apply to **Insurance Services** relating to life, health or accident insurance.

**Wrongful Professional Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the rendering or failing to render **Professional Services** and (1) medical or health care services; (2) real estate appraisal services; (3) architectural or construction management services; (4) the practice of law or the rendering of legal services; (5) the rental of a safe deposit box; (6) services provided to customers as an enrolled actuary as that term is used in or in connection with **ERISA**; and (7i) any services performed by or for any entity to which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit.

## SECTION VI - LIMIT OF LIABILITY, RETENTION AND INDEMNIFICATION

### A. LIMIT OF LIABILITY

(1) The **Insurer's** maximum Limit of Liability under this **Policy** for all Insuring Agreements combined shall not exceed the Total Policy Limit set forth in Item 3 of the Declarations regardless of whether such Insuring Agreement is provided as a sublimit or a separate limit. Amounts incurred as **Defense Costs** will reduce, and shall be part of and not in addition to, the Limit of Liability.

(2) Unless otherwise specified in Item 8 of the Declarations, the **Insurer's** maximum Limit of Liability for each Insuring Agreement for all **Loss** resulting from all **Claims** first made during the **Policy Period** shall be a part of, and not in addition to, the Insured Persons Liability/Company Indemnification Limit of Liability set forth in Item 9 of the Declarations.

(3) If a **Claim** is subject to more than one Insuring Agreement, the **Insurer's** maximum Limit of Liability for such **Claim** shall not exceed the highest Limit of Liability provided by any Insuring Agreement providing coverage; provided, however, that this provision shall not apply where a separate Limit of Liability is set forth for an Insuring Agreement in Item 8 of the Declarations.

(4) In the event the applicable Limit of Liability is exhausted by payment of **Loss**, or has been tendered to or on behalf of the **Insured**, then any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished.

### B. RETENTION AND INDEMNIFICATION

(1) Covered **Defense Costs** will be applied against the Retention. The **Insurer** shall only pay for covered **Loss**, including covered **Defense Costs**, for each **Claim** in excess of the applicable Retention as set forth in Item 10 of the Declarations.

(2) No Retention shall apply to **Loss** incurred by the **Insured Persons** for which the **Company** is:

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

(a) not permitted or required by law to advance **Defense Costs** of, or otherwise indemnify, the **Insured Persons** for **Loss**; or

(b) permitted or required to advance **Defense Costs** or indemnify the **Insured Persons** but does not do so by reason of **Financial Impairment.**

(3) If the **Company** is legally permitted or required to advance **Defense Costs** of, or otherwise indemnify the **Insured Persons** for **Loss**, regardless of whether actual advancement or indemnification is granted, the Retention applicable to Insuring Agreement B (Company Indemnification) shall apply to such **Loss**, unless the **Company,** solely by reason of its **Financial Impairment**, does not make such advancement or indemnification.

(4) A single Retention shall apply to covered **Loss** resulting from each **Claim**. If **Loss** from a **Claim** is covered under more than one Insuring Agreement, the largest Retention shall be applicable to the **Claim**. If a single Retention applies to multiple **Insureds** other than the **Company**, the Retention shall be prorated on a *per capita* basis among the applicable **Insureds**. The total Retention shall in no event exceed the largest of such applicable Retentions set forth in Item 10 of the Declarations.

(5) Except for the payment of **Defense Costs**, the **Insurer** shall pay one hundred (100%) percent of covered **Loss**, in excess of the applicable Retention, upon final disposition of the **Claim**.

**C. SINGLE CLAIM OR LOSS - Claims** or **Loss** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** by one or more **Insureds** shall be considered a single **Claim** or **Loss**, and only one Retention and Limit of Liability shall apply to such single **Claim** or **Loss**. Each such single **Claim** or **Loss** shall be deemed to be made on the date the earliest of such **Loss** or **Claims** was first made regardless of whether such date is before or during the **Policy Period**.

## SECTION VII - NON-EROSION OF INSURING AGREEMENT A AND ORDER OF PAYMENTS

### A. NON-EROSION OF INSURING AGREEMENT A

(1) If the Limit of Liability for any Insuring Agreement extending coverage to the **Company** is a sublimit of the D&O Policy, the Limit of Liability applicable to Insuring Agreement A (Insured Persons Liability) shall not be reduced by the payment of **Loss** resulting from **Claims** covered by such Insuring Agreement. If a separate Limit of Liability is set forth in Item 8 of the Declarations this provision shall not apply.

(2) If the Retention applicable to Insuring Agreement B (Company Indemnification) applies to **Loss**, regardless of whether actual indemnification is granted, such **Loss** shall be deemed to be paid under Insuring Agreement B (Company Indemnification).

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

**B. ORDER OF PAYMENTS** - In the event one or more **Claims** result in **Loss** which, in aggregate, exceeds the Total Policy Limit set forth in Item 3 of the Declarations:

(1) the **Insurer** shall first pay such **Loss** for which coverage is provided under Insuring Agreement A (Insured Persons Liability); then

(2) with respect to whatever remaining amount of the Limit of Liability is available after payment of such **Loss**, the **Insurer** shall pay such **Loss** for which coverage is provided under Insuring Agreement B (Company Indemnification); then

(3) the Insurer shall pay such **Loss** of the **Company**, if coverage for the **Company's Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement.

The **Financial Impairment** of the **Company** or any **Insured Person** shall not amend the above prioritization of payment of covered **Loss** under this **Policy** pursuant to this Subsection.

## SECTION VIII - DEFENSE AND SETTLEMENT

### A. NO DUTY TO DEFEND

(1) It shall be the duty of the **Insured** and not the duty of the **Insurer** to defend **Claims**. The **Insured** shall only retain counsel that is mutually agreed upon with the **Insurer**, the **Insurer's** consent for which shall not be unreasonably withheld.

(2) The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall be entitled to full information and all particulars it may request in order to determine whether to consent.

(3) The **Insurer** shall have the right but not the duty to associate with the **Insured** in the settlement and defense of any **Claim** that appears reasonably likely to involve the **Insurer**. Such association shall include, but not be limited to, participation in the formation of litigation strategy, review of pleadings and other pertinent papers prior to filing, and participation in settlement negotiations.

### B. PAYMENT OF DEFENSE COSTS

(1) Subject to Section IX, the **Insurer**, if requested by the **Insured**, shall advance covered **Defense Costs** on a current basis prior to final disposition of a **Claim**, except when advancement of **Defense Costs** is prohibited by law or regulation. The **Insured** shall repay any advanced **Defense Costs** to the **Insurer** in the event it is established that the **Insurer** has no liability under this **Policy** for such **Defense Costs**.

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

(2) Prior to advancing **Defense Costs**, the **Insurer** shall be entitled to sufficient information and documentation as to the amount and purpose of any **Defense Costs** to enable it to evaluate such **Defense Costs** and to verify that such **Defense Costs** were actually incurred.

**C. DUTY TO COOPERATE -** As a condition precedent to coverage under this **Policy**, the **Insured** shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request. The **Insured** shall promptly furnish the **Insurer** with all information and documentation reasonably requested by the **Insurer** including, but not limited to, copies of reports, investigations, pleadings and other pertinent papers.

## SECTION IX - ALLOCATION AND ARBITRATION

### A. ALLOCATION

(1) If in any **Claim** the **Insured is** jointly and severally liable with non-insureds (including the **Company** if coverage for the **Company's Wrongful Acts** is not afforded in an Insuring Agreement made part of this **Policy** by endorsement) for **Loss**, then such **Loss** shall be allocated between the **Insured** and non-insured based on the relative legal exposures of the parties to such **Claim**.

(2) If any **Claim** consists of both covered and uncovered matters, then the amount of covered **Loss** shall be allocated based upon the relative legal exposures of the **Insured** to such covered and uncovered matters.

**B. ARBITRATION** - The **Insurer** and the **Insured** agree to use their best efforts to reach a proper allocation of **Loss**. If the **Insured** and the **Insurer** cannot agree on an allocation:

(1) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(2) if requested by the **Insured** pursuant to Section VIII.B.(1), the **Insurer** shall advance **Defense Costs** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

(3) the **Insurer**, if requested by the **Insured**, shall submit the allocation dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

Any negotiated, arbitrated or judicially determined allocation of **Loss** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

## SECTION X - NOTICE OF CLAIMS AND POTENTIAL CLAIMS

**A.** The **Insured**, as a condition precedent to any rights under this **Policy**, shall give the **Insurer** written notice during the Policy Period or the Discovery Period (if purchased), as soon as practicable, of any **Claim** first made during the **Policy Period**; provided, however, such notice shall in no event be given later than sixty (60) days after the Insured first becomes aware of the **Claim**.

**B.** If during the **Policy Period**, the **Insured** first becomes aware of facts or circumstances which may give rise to a **Claim**, and gives written notice to the **Insurer** of such facts or circumstances and reasons for anticipating a **Claim**, then any **Claim** subsequently made based upon such circumstances shall be deemed to have been first made during the **Policy Period**. As a condition precedent to any coverage hereunder for such **Claims**, such notice must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts or circumstances potentially giving rise to a **Claim**, as well as the identity of the potential claimants and the causes of action and theories of liability to be asserted.

**C.** All notices required to be given to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 5 of the Declarations.

## SECTION XI - MERGERS, ACQUISITIONS AND CHANGES IN BUSINESS ACTIVITIES

**A.** If during the **Policy Period**, the **Named Insured**:

(1) acquires, merges with, or creates any non-bank entity;

(2) acquires or merges with another entity, or creates or acquires a **Subsidiary**, whose assets equal or exceed twenty-five (25%) percent of the **Company's** total assets at the time of the transaction;

(3) creates or acquires a financial services holding company or converts from a bank holding company to a financial services holding company;

(4) converts from a mutual company to a stock company;

(5) changes or converts its corporate structure from a C-corporation to an S-corporation; or

(6) is involved in one or more corporate transaction(s) in which the outstanding and issued stock of the **Named Insured** eligible to vote for the election of the **Named Insured's** board of directors or trustees is diluted by at least twenty-five (25%) percent.

then no coverage shall be afforded under this **Policy** for any **Loss** incurred by the **Company**, such entity, **Subsidiary**, or **Insured Persons** resulting from any **Claim** arising out of or in any way involving any such transactions or events (1), (2), (3), (4) or (5) of this Subsection, prior to:

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

(a) the **Named Insured** providing written notice and any requested information regarding the transactions or events to the **Insurer** as soon as practicable;

(b) the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(c) the **Named Insured** accepting any special terms, conditions and/or Exclusions, and paying any additional premium required by the **Insurer**.

However, with respect to Subsection (A)(2) above, this provision shall not become applicable until ninety (90) days after the transactions or events (1), (2), (3), (4) or (5) of this Subsection.

**B.** If during the **Policy Period**, the **Company** creates or acquires a bank **Subsidiary**, whose assets are less than twenty-five (25%) percent of the **Company's** total assets at the time of the transaction, the **Insurer** agrees to provide automatic coverage for such **Subsidiary** and its **Insured Persons** for the remainder of the **Policy Period**.

**C.** Any coverage otherwise afforded under this **Policy** for any **Subsidiary** acquired, merged or created during the **Policy Period** or its **Insured Persons** shall not apply to any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) any **Wrongful Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of the transactions or events (1), (2), (3), (4) or (5) of Subsection XI.A; or

(2) any other **Wrongful Act**, which together with a **Wrongful Act** committed or allegedly committed prior to the effective date of the transactions or events (1), (2), (3), (4) or (5) of Subsection XI.As, constitute **Interrelated Wrongful Acts**.

## SECTION XII - CANCELLATION/NONRENEWAL/CONVERSION

**A. NAMED INSURED CANCELLATION -** The **Named Insured** may cancel this **Policy** or any Insuring Agreement by providing written notice to the **Insurer**. If the **Named Insured** cancels this **Policy**, the **Insurer** shall only return ninety (90%) percent of the unearned premium. The return of unearned premium will be based upon a short-rate calculation if the **Policy** is cancelled by the **Named Insured.** Unearned premium will be returned by the **Insurer** as soon as practicable.

**B. INSURER NONRENEWAL OR CANCELLATION**

(1) **NONRENEWAL** - The **Insurer** shall not be required to renew this **Policy** or any Insuring Agreement upon expiration of the **Policy Period**. This **Policy** or any Insuring Agreement may be non-renewed by the **Insurer** by giving to the **Named Insured** written notice stating when, not less than sixty (60) days thereafter, nonrenewal shall become effective and the reason(s) therefore.

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

(2) **CANCELLATION**

(a) This **Policy** or any Insuring Agreement may be cancelled by the **Insurer** by giving to the **Named Insured** written notice stating when such cancellation shall become effective and the reason(s) therefore.

(b) The **Insurer** shall provide not less than thirty (30) days notice of its intent to cancel for non-payment of premium, or sixty (60) days notice of its intent to cancel for any other reason.

(c) If the **Insurer** cancels this **Policy** or any Insuring Agreement, the **Insurer** shall return one hundred (100%) percent of the unearned premium. The return of unearned premium will be based upon a pro-rata calculation if the **Policy** is canceled by the **Insurer**. The return of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation Unearned premium will be returned by the **Insurer** as soon as practicable.

(3) **NOTICE** - All notices pursuant to Section XII.B. will be mailed to the **Named Insured** by certified mail at the address set forth in Item 1 of the Declarations. The mailing of such notice as aforesaid shall be sufficient proof of notice, and this **Policy** shall terminate at the date and hour specified in such notice.

## C. CONVERSION

(1) Upon the occurrence of any Conversion Event, this **Policy** shall continue in full force and effect with respect to **Claims** for **Wrongful Acts** before such event, but coverage shall cease with respect to **Wrongful Acts** after such event (herein called the "Conversion Period"):

(2) Upon a **Conversion Event**, this **Policy** may not be cancelled and the entire premium shall be deemed fully earned. The occurrence of any **Conversion Event** shall not affect the **Insured's** right to purchase the Discovery Period pursuant to Section III.

(3) In the event of **Financial Impairment** or sale of a **Subsidiary** comprising less than fifty (50%) percent of the **Named Insured's** total assets, this Conversion provision shall apply only to the **Subsidiary** and its **Insured Persons** and the **Policy** shall continue in full force with respect to all other **Companies**.

## SECTION XIII - REPRESENTATIONS AND SEVERABILITY

**A. REPRESENTATIONS -** It is agreed and represented that the particulars and statements contained in the **Application** are the basis of this **Policy,** and are to be considered as incorporated into and constituting a part of this **Policy** as if physically attached. By acceptance of this **Policy**, the **Company** and **Insured Persons** agree that:

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

(1) such **Application** shall be construed as a separate **Application** for coverage by the **Company**, and by each of the **Insured Persons**;

(2) this **Policy** shall not be deemed to be a series of individual insurance contracts with the **Company** and each of the **Insured Persons**; and

(3) the statements in the **Application** are the respective representations of the **Company** and each of the **Insured Persons**, the statements are material to the acceptance of the risk or hazard assumed by the **Insurer** under this **Policy**, and this **Policy** is issued in reliance upon the truth of such representations.

**B. SEVERABILITY -** It is agreed and represented that in the event of non-disclosures as respects the **Application** and/or the **Application** contains misrepresentations with the actual intent to deceive, no coverage will be provided for any **Claim** under this **Policy** with respect to:

(1) any **Insured Person** who knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**;

(2) the **Company**, to the extent the **Company** indemnifies the **Insured Person** reflected in Subsection B.(1) above; or

(3) the **Company**, if coverage for the **Company's Wrongful Acts** is set forth in an Insuring Agreement made part of this **Policy** by endorsement, if any past, present, or future chief financial officer, in-house counsel, chief executive officer, President or Chairman of the Board of the **Company**, or any person holding any equivalent position within the **Company** (regardless of title), knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**.

The foregoing conditions shall apply whether or not the **Insured Person** actually knew if the misrepresentation or untruthful disclosure was made in the **Application** for coverage.

**C. SEVERABILITY OF EXCLUSIONS -** With respect to the Exclusions herein, in order to determine if coverage is available:

(1) no **Wrongful Act**, fact or circumstance pertaining to, or knowledge possessed by, any **Insured Person** will be imputed to any other **Insured Person**; and

(2) all **Wrongful Acts**, facts or circumstances pertaining to, and knowledge possessed by, any past, present, or future chief financial officer, in-house counsel, chief executive officer, President or Chairman of the Board of the **Company**, or any person holding any equivalent position within the **Company** (regardless of title), shall be imputed to the **Company** with respect to the Fraud/Criminal/Willful Violation of Law Exclusion and the Illegal Profit/Claw-Back/Payment/Conflicts Exclusion.

## SECTION XIV - GENERAL TERMS AND CONDITIONS

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

**A. SUBROGATION -** In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the **Insured Persons'** and the **Company's** rights to recovery therefore, and the **Insured** shall execute all papers required and shall do everything that may be necessary to secure the **Insurer's** rights, including the execution of such documents as may be necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured Persons** or the **Company**.

**B. ASSIGNMENT AND ACCEPTANCE -** By acceptance of this **Policy**, the **Insured** and the **Insurer** agree that this **Policy**, the **Application**, and any written Endorsements attached thereto constitute the entire agreement between the parties. Assignment of interest under this **Policy** shall not bind the **Insurer** until its consent is endorsed hereon.

**C. CONFORMITY TO STATUTE -** Any terms of this **Policy** which are in conflict with the terms of any applicable laws governing this **Policy** are hereby amended to conform to such laws.

**D. AUTHORIZATION -** By acceptance of this **Policy**, the **Insureds** agree that the **Named Insured** will act on behalf of all **Insureds** for all purposes under this **Policy** including, but not limited to, giving and receiving of all notices and correspondence, cancellation, nonrenewal or termination of this **Policy**, payment of premiums, the negotiation and acceptance of Endorsements, and receipt of any return premiums that may be due under this **Policy**.

**E. CHANGES -** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not effect a waiver or a change in any part of this **Policy** or stop the **Insurer** from asserting any right under the terms of this **Policy**, nor shall the terms, conditions and limitations of this **Policy** be waived or changed, except by written Endorsement issued to form a part of this **Policy**.

**F. ACTION AGAINST THE INSURER -** No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this **Policy**, and until the **Insured's** obligation to pay is finally determined, either by adjudication or by written agreement of the **Insureds**, the claimant, and the **Insurer**.
No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any **Claim** against the **Insured** nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

**G. OTHER INSURANCE OR INDEMNIFICATION -** This **Policy** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Costs**, payable under this **Policy** shall be excess to:

(1) any other existing insurance regardless of whether collectable, including but not limited to, any insurance under which there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**; and

(2) indemnification to which an **Insured** is entitled from any entity other than the **Company**.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**H. LOSS INFORMATION** - The **Insurer** will provide **Loss Information** to the **Company** within ten (10) days of the **Company's** request or, if required by statute, at the same time as any notice of cancellation or nonrenewal of this **Policy**.

**I. INSOLVENCY/BANKRUPTCY** - The **Financial Impairment** of the **Insured** or of the estate of such **Insured** shall not deprive the **Insurer** of its rights under this **Policy**.

**J. HEADINGS AND SUB-HEADINGS -** The descriptions in the headings and sub-headings of this **Policy** are solely for convenience and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be signed by its President and Secretary and countersigned, if required, on the Declarations by a duly authorized agent of the **Insurer**.

President

Secretary

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

Policy Issued By: FORTEGRA SPECIALTYINSURANCE COMPANY

This endorsement, effective as of 12:01 A.M. standard time on **11/20/2022**, forms a part of **policy number RCB-1000063-00** issued to **AmeriCash Holding, LLC / Creditbox.com / S.A.I.L. LLC**

## AMENDED PRIOR KNOWLEDGE/ NOTICE/ LITIGATION/ CLAIM EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the above exclusion in this **Policy** is amended and replaced by the following:

**Prior Knowledge/Notice/Litigation/Claim Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) facts or circumstances of which any **Insured Person** or **Employee** had knowledge of, and which any **Insured Person** or **Employee** could reasonably foresee might result in a **Claim** prior to **20th** day of **November**, **2022**;

(2) any **Wrongful Act**, or any **Wrongful Act** which is part of any **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice given to any insurer other than the **Insurer** under any similar insurance policy providing protection for any **Insured**; or

(3) any litigation or **Claim** against any **Insured**, **Employee** or **Company** initiated prior to **20th** day of **November**, **2022**, or any subsequent litigation or **Claim**, based upon, arising out of, resulting from, related to, or in any way involving the same or substantially the same fact, circumstance or situation underlying such prior litigation or **Claim**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

ACCEPTED: _____
                CHAIRMAN OF BOARD/CEO or PRESIDENT

ACCEPTED: _____
                OFFICER

DATED: _____

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

# BANKERS PROFESSIONAL LIABILITY
# FORTEGRA FINANCIAL SPECIALTY COMPANY
# INSURING AGREEMENT

| Policy Number: RCB-1000063-00 | Limit of Liability: $1,000,000/ Retention: $25,000 |
|---|---|

In consideration of the premium paid and in reliance upon all statements made and the information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage under this Insuring Agreement will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement and the **Policy**, as follows:

1. The **Policy** is amended by adding an additional Insuring Agreement to Section I as follows:

   **BANKERS PROFESSIONAL LIABILITY INSURING AGREEMENT**

   The **Insurer** will pay on behalf of the **Insureds** for their **Loss** resulting from **Claims** first made by or on behalf of a customer of the **Company** during the **Policy Period** against the **Insured** for **Wrongful Professional Services Acts**, which **Claims** are reported to the **Insurer** during the **Policy Period** (or the Discovery Period if purchased).

2. For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any Endorsements thereto shall apply except:

   A. Section II.B., entitled "Not-for-Profit Directorships", is deleted.

   B. The terms Interrelated Wrongful Acts and Wrongful Act, and all references to such terms used throughout the Policy, are deleted and replaced as follows:

      **Interrelated Wrongful Professional Services Acts** means **Wrongful Professional Services Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

      **Wrongful Professional Services Act**, either in singular or plural, means any actual or alleged error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured** in the rendering or failure to render **Professional Services**.

   C. The term **Professional Services**, and all references to such terms used throughout the **Policy**, is deleted and replaced as follows:

      **Professional Services** means only those services performed or required to be performed by an **Insured** for, or on behalf of, a customer of the **Company**:

      (1) for a fee, commission or other monetary compensation;

      (2) where a fee, commission or other monetary compensation would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

      (3) for other remuneration which inures to the benefit of the **Insured**.

FSIC CBP 01 02 22                              Page 1 of 4

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**Professional Services** does not include: (i) medical or health care services; (ii) real estate appraisal services; (iii) architectural or construction management services; (iv) the practice of law or the rendering of legal services; (v) the rental of a safe deposit box; (vi) services provided to customers as an enrolled actuary as that term is used in or in connection with **ERISA**; and (vii) any services performed by or for any entity to which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit.

D. Section IV, entitled "Definitions", is amended to add the following terms:

**Loan Servicing** means the servicing of any loan, lease or extension of credit by the **Company** (not including financing for investment banking, or leveraged or management buyouts). **Loan Servicing** includes the following activities pertinent to any loan, lease or extension of credit: record keeping, billing and disbursements of principal and interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's credit worthiness, or the determination of the depreciation amount of property (but not projections of, or an appraisal for, residual or future value of property). **Loan Servicing** does not include: the purchase, acquisition or sale of any loan, lease or extension of credit: any act of restructuring, terminating, or transferring any loan, lease or extension of credit; foreclosure of any loan, lease or extension of credit; nor acquisition or repossession of any entity or property as security or collateral for any loan, lease or extension of credit.

E. All of the exclusions set forth in Section V, entitled "Exclusions Applicable to all Insuring Agreements", shall apply except the "Brokerage/Advisory Services Exclusion", "Insurance Services Exclusion" and "Wrongful Professional Services Exclusion" which are deleted.

F. Section V, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to add the following:

**Bonding/Insurance Company Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** that is brought directly or indirectly by, on behalf of, at the behest of, or for the benefit of, any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

**Fee Dispute Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving disputes over fees, commissions, or charges for the **Company's** services.

**Insolvency Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the:

(1) insolvency, receivership, liquidation or bankruptcy of any insurance company with whom the **Insured** conducts business; or

(2) bankruptcy of, or suspension of payment by, any bank, banking firm, broker or dealer in securities or commodities, or any other financial institution; provided, however, that this Exclusion shall not apply with respect to the **Insured's** investment on behalf of a customer in the stock of any such entities.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**Investment Banking/Securities Underwriting Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) the underwriting, syndicating or promoting any security (except loan syndications or equity and/or debt securities issued for the **Company**);

(2) the rendering of advice or recommendations regarding any actual or attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, offering of securities, dissolution, sale of all or substantially all of the assets or stock of, or any other transactions similar to such activities as respects, any entity;

(3) rendering of any fairness opinion;

(4) proprietary trading;

(5) any acquisition or sale of securities of the **Company** for its own account; or

(6) any other investment banking activity, including any disclosure requirements in connection with any of the foregoing.

**Investment Performance Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss**, other than **Defense Costs**, in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving intentional, written or verbal, misrepresentations, promises or guarantees regarding the past performance or future value of any investment product.

**Lender Liability/Loan Servicing Exclusion -** The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving **Loan Servicing**, or **Wrongful Professional Services Acts** relating to any extension of credit, any agreement or refusal to extend credit, or the collection, or restructuring of any extension of credit.

**Mechanical Malfunction Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the mechanical or electronic failure, breakdown or malfunction of any machine or system of machines.

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**Notary Services Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the notarization or certification of a signature of a person unless that person or someone claiming to be that person physically appeared before the **Insured** at the time of notarization or certification.

**Receivership Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the **Company's** function or activity as receiver, trustee in bankruptcy, or assignee for the benefit of creditors.

**RICO Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any violation, or alleged violations, of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961–1968), and amendments thereto, or similar provisions of any state or local statutory law, common law or administrative law.

3. This Insuring Agreement shall be effective as of 12:01 a.m. on the date indicated by Endorsement to this **Policy**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

# EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT

Policy Issued By: FORTEGRA SPECIALTY INSURANCE COMPANY

| Policy Number: RCB-1000063-00 | Limit of Liability: $1,000,000 / Retention: $25,000 |
|---|---|

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage under this Insuring Agreement will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement and the **Policy**, as follows:

1.  The attached **Policy** is amended by adding an additional Insuring Agreement to Section I as follows:

    **EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT**

    The **Insurer** will pay on behalf of the **Insureds** for their **Loss** resulting from **Claims** first made during the **Policy Period** against the **Insured** for **Wrongful Employment Acts,** which **Claims** are reported to the **Insurer** during the **Policy Period** (or the Discovery Period if purchased).

2.  For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any amendments thereto shall apply except:

    A.  Section II.B., entitled "Not-for-Profit Directorships", is deleted.

    B.  The terms **Interrelated Wrongful Acts** and all references used throughout the **Policy** are deleted and replaced as follows:

        **Interrelated Wrongful Employment Acts** means **Wrongful Employment Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

    C.  The definition of **Wrongful Acts** and all references used throughout the **Policy** are deleted and replaced as follows:

        **Wrongful Acts** means **Wrongful Employment Acts**, as such term is defined in the **Policy.**

    D.  The definition of **Wrongful Employment Acts** and all references used throughout the **Policy** are deleted and replaced as follows:

        **Wrongful Employment Acts** means any of the following, whether actual or alleged, and claimed by or on behalf of an existing or former **Employee** or an applicant for employment resulting from employment-related discrimination, harassment, wrongful termination, retaliation, defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity, or any other violation of common or statutory law relating to employment, with the exception of those certain laws identified in the **Violation of Certain Employment Laws Exclusion**.

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

E.  Section IV, entitled "Definitions", is further amended to add the following sentence to the end of the definition of **Claim**:

Provided, however, **Claim** shall not include a labor or grievance arbitration pursuant to a collective bargaining agreement.

F.  Section IV, entitled "Definitions", is further amended to delete and replace the definition of **Loss** as follows:

**Loss** means **Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, pre- and post-judgment interest, claimant's attorneys fees awarded pursuant to statute, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law.

**Loss** shall not include:

(1) taxes;

(2) criminal or civil fines or penalties imposed by law, and liquidated damages under the Age Discrimination in Employment Act;

(3) the payment of insurance plan benefits the claimant may have been entitled to as an **Insured Person**, including but not limited to benefits payable pursuant to **ERISA** or the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended;

(4) costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(5) other than **Defense Costs**, front pay, future damages or other future economic relief or the equivalent thereof which compensates the claimant for damages beyond the date of settlement or adjudication, where the **Company** has the option pursuant to a settlement or adjudication to reinstate the claimant, but fails to reinstate the claimant;

(6) other than **Defense Costs**, compensation earned by the claimant while employed by the **Company** but not paid by the **Company** for reasons other than **Wrongful Employment Acts**, or damages determined to be owed under an express written contract of employment or an express written obligation to make payments in the event of termination of employment; or

(7) any matters which are uninsurable under the law pursuant to which this Insuring Agreement shall be construed.

G.  Section V, entitled "Exclusions Applicable to all Insuring Agreements", is amended to delete the following Exclusions:

**Brokerage/Advisory Services Exclusion;**

**Collusion Exclusion;**

**Contract Exclusion;**

**Claw-Back Exclusion;**

**Foreclosed Property Exclusion;**

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

**Illegal Profit/Claw-Back/Payment/Conflicts Exclusion;**

**Improper Solicitation Exclusion;**

**Pollution Exclusion;**

**Short-Swing Profit Exclusion**;

**Trust Services Exclusion**; and

**Wrongful Employment Acts Exclusion.**

H. Section VIII.A. of the **Policy**, entitled "No Duty To Defend", is deleted and replaced as follows:

### A. DUTY TO DEFEND

(1) The **Insurer** has the right and duty to defend and appoint an attorney to defend any **Claim** brought against any **Insured** for a **Wrongful Employment Act** even if the **Claim** is frivolous, without merit or fraudulent. If more than one **Insured** is involved in a **Claim**, the **Insurer** may, in its sole discretion, appoint separate attorneys for one or more of such **Insureds** if there is a material (actual or potential) conflict of interest among any such **Insureds**. The **Insurer's** duty to defend any **Claim** for a **Wrongful Employment Act** ends after the applicable Limits of Liability have been exhausted by payment of **Loss**.

(2) The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.

(3) If the **Insured** receives a settlement offer that the **Insurer** deems reasonable and the **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

(a) the amount for which the **Claim** could have been settled for; plus

(b) **Defense Costs** accrued as of the date such settlement was proposed; plus

(c) fifty (50%) percent of the covered **Loss**, including **Defense Costs** incurred after the date such settlement was proposed, in excess of the amount for which the **Claim** could have been settled.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable Retention set forth in the Declarations, Subpart (c) above shall not apply and the **Insurer's** liability for all **Loss** arising from such **Claim** shall not exceed the amount for which the **Claim** could have been settled plus **Defense Costs** incurred as of the date such settlement was proposed. Any amounts paid by the **Insurer** under Subparts (a), (b), or (c) above shall be part of and not in addition to the applicable Limit of Liability set forth in Item 9 of the Declarations.

I. Section VIII.B. of the **Policy**, entitled "Payment of Defense Costs", is deleted in its entirety.

---

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

3.  This Insuring Agreement shall be effective as of 12:01 a.m. on the date indicated by Endorsement to this **Policy**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

# LENDER LIABILITY INSURING AGREEMENT

Policy Issued By: FORTEGRA SPECIALTY INSURANCE COMPANY

| Policy Number: RCB-1000063-00 | Limit of Liability: $1,000,000/ $25,000 Retention |
|---|---|

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage under this Insuring Agreement will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement and the **Policy**, as follows:

1.  The **Policy** is amended by adding an additional Insuring Agreement as follows:

    **LENDER LIABILITY INSURING AGREEMENT**

    The **Insurer** will pay on behalf of the **Company** its **Loss** resulting from **Claims** first made during the **Policy Period** by a **Borrower** or a **Guarantor** against the **Company** for **Wrongful Acts** relating to an extension of credit, an agreement or refusal to extend credit, the guarantee of credit, **Loan Servicing**, or the collection or restructuring of any credit by the **Company**.

2.  For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any Endorsements thereto shall apply except:

    A.  Section II, entitled "Additional Coverages", is deleted in its entirety.

    B.  Section IV, entitled "Definitions", is amended to add the following:

        **Borrower** means any person or entity to which the **Company** has extended credit, entered into an agreement to extend credit, or refused to extend credit.

        **Guarantor** means any person or entity which guaranteed an extension of credit or agreement to extend credit by the **Company** to a **Borrower**.

        **Loan Servicing** means the servicing of any loan, lease or extension of credit by the **Company** (not including financing for investment banking, or leveraged or management buyouts). **Loan Servicing** includes the following activities pertinent to any loan, lease or extension of credit: record keeping, billing and disbursements of principal and interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's credit worthiness, or the determination of the depreciation amount of property (but not projections of, or an appraisal for, residual or future value of property). **Loan Servicing** does not include: the purchase, acquisition or sale of any loan, lease or extension of credit: any act of restructuring, terminating, or transferring any loan, lease or extension of credit; foreclosure of any loan, lease or extension of credit; nor acquisition or repossession of any entity or property as security or collateral for any loan, lease or extension of credit.

    C.  All of the Exclusions set forth in Section V, entitled "Exclusions Applicable to all Insuring Agreements", shall apply and the following are added:

        **Bonding/Insurance Company Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** that is brought directly or indirectly by, on behalf of, at the behest of, or for the

FILED DATE: 1/28/2026 10:18 AM  2026CH00820

FILED DATE: 1/28/2026 10:18 AM    2026CH00820

benefit of, any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

**Fee Dispute Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving disputes over fees, commissions, or charges for the **Company's** services.

**Insolvency Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the **Financial Impairment** of the **Company**.

**Investment Banking/Securities Underwriting Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving:

(1) the underwriting, syndicating or promoting any security (except loan syndications or equity or debt securities issued by the **Company**);

(2) the rendering of advice or recommendations regarding any actual or attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, offering of securities, dissolution, sale of all or substantially all of the assets or stock of, or any other transactions similar to such activities as respects, any entity;

(3) rendering of any fairness opinion;

(4) proprietary trading;

(5) any acquisition or sale of securities of the **Company** for its own account; or

(6) any other investment banking activity, including any disclosure requirements in connection with any of the foregoing activities.

**Legal Lending Limit Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any extension of credit which was, at the time of its making, in excess of the legal lending limit of the **Company**.

**Receivership Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving the **Company's** function or activity as receiver, trustee in bankruptcy, or assignee for the benefit of creditors.

**RICO Exclusion** - The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** based upon, arising out of, resulting from, related to, or in any way directly or indirectly involving any violation, or alleged violations, of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961–1968), and amendments thereto, or similar provisions of any state or local statutory law, common law or administrative law.

D. Section VIII.A. of the **Policy**, entitled "No Duty To Defend", is deleted and replaced as follows:

**A. DUTY TO DEFEND**

(1) The **Insurer** has the right and duty to defend and appoint an attorney to defend any **Claim** brought against any **Insured** for a **Wrongful Employment Act** even if the **Claim** is frivolous, without merit or fraudulent. If more than one **Insured** is involved in a **Claim**, the **Insurer** may, in its sole discretion, appoint separate attorneys for one or more of such **Insureds** if there is a material

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

(actual or potential) conflict of interest among any such **Insureds**. The **Insurer's** duty to defend any **Claim** for a **Wrongful Employment Act** ends after the applicable Limits of Liability have been exhausted by payment of **Loss**.

(2) The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.

(3) If the **Insured** receives a settlement offer that the **Insurer** deems reasonable and the **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

(a) the amount for which the **Claim** could have been settled for; plus

(b) **Defense Costs** accrued as of the date such settlement was proposed; plus

(c) fifty (50%) percent of the covered **Loss**, including **Defense Costs** incurred after the date such settlement was proposed, in excess of the amount for which the **Claim** could have been settled.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable Retention set forth in the Declarations, Subpart (c) above shall not apply and the **Insurer's** liability for all **Loss** arising from such **Claim** shall not exceed the amount for which the **Claim** could have been settled plus **Defense Costs** incurred as of the date such settlement was proposed.

Any amounts paid by the **Insurer** under Subparts (a), (b), or (c) above shall be part of and not in addition to the applicable Limit of Liability set forth in Item 9 of the Declarations.

E. Section VIII.B. of the **Policy**, entitled "Payment of Defense Costs", is deleted in its entirety.

F. In the event that a **Claim** is covered under this Insuring Agreement, the **Insurer** shall not be liable for payment of **Loss** in connection with such **Claim** under the Broad Form Company Liability Insuring Agreement (if applicable).

3. This Insuring Agreement shall be effective as of 12:01 a.m. on the date indicated by Endorsement to this **Policy**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

<div style="text-align: left; writing-mode: vertical">FILED DATE: 1/28/2026 10:18 AM   2026CH00820</div>

## SERVICE OF SUIT CLAUSE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY RULES. PLEASE READ IT CAREFULLY.

I.   In any cause of action arising under this policy, or certificate, cover note, or other confirmation of this insurance issued by your surplus lines agent, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing herein constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of appeal.

II.   All lawful process may be served in any action, suit or proceeding instituted by, or on behalf of, you or any beneficiary under this policy, against us arising out of this policy, upon:

**Corporate Creations Network Inc. at the address designated on pages 4-9**

III.   Pursuant to any law of any state, the District of Columbia or territory of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other applicable individual specified for that purpose in the applicable statute or regulation, or his successor or successors in office, as attorney or agent for receipt of lawful service of process as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy of insurance, and we hereby designate the above-named as the person to whom the said individual, the surplus lines producer, or any applicable state surplus lines association or stamping office, is authorized to mail such process or a true copy thereof. The service of process as set forth above and below is cumulative to any other methods which may be provided by law for service of process upon us.

IV.   THE LANGUAGE OF THIS ENDORSEMENT ABOVE IS MODIFIED IN EACH APPLICABLE STATE AS SET FORTH BELOW TO COMPLY WITH CERTAIN STATE SPECIFIC REQUIREMENTS AND DISCLOSURES:

**Arizona**
By issuing or delivering a surplus lines policy through a surplus lines broker in Arizona, we are conclusively deemed to have irrevocably appointed the Arizona Director of Insurance as our agent for acceptance of service of all legal process issued in Arizona in any action or proceeding under or arising out of such policy, and service of the process on the director is lawful personal service on us.

**California**
We may be sued upon any cause of action arising in under any surplus line insurance contract made by us, or any evidence of such insurance issued or delivered by the surplus line broker, pursuant to the procedures set forth in Cal. Ins. Code §§ 1610 to 1620, inclusive. Further, by assuming surplus line insurance, we subject ourselves to Chapter 6 of the California Insurance Code.

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**Idaho**

We shall be sued upon any cause of action arising in Idaho under any contract issued by us as a surplus line contract pursuant to Idaho surplus lines law, in the district court of the county in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the Director of the Department of Insurance of Idaho as provided in Idaho Code Ann. § 41-334(1). The director shall forthwith mail a copy of the process served to the person designated in Section II of this Endorsement, by prepaid registered mail with return receipt requested. We have thirty (30) days from the date of service upon the director within which to plead, answer, or otherwise defend the action. Upon service of process upon the director in accordance with Idaho Code Ann. § 41-1231 the court shall be deemed to have jurisdiction in personam over us.

**Illinois**

We hereby designate the Illinois Director of Insurance and his successors in office as our true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of any insurance we write delivered pursuant to 215 Ill. Comp. Stat. § 5/445.

**Iowa**

We may be sued upon a cause of action arising in Iowa under a surplus lines insurance policy or contract placed by us or upon evidence of insurance placed by us and issued or delivered in Iowa by a surplus lines insurance producer.

**Kentucky**

We shall be sued upon any cause of action arising in Kentucky under any contract issued by us as a surplus lines contract pursuant to subtitle 10 of the Kentucky Insurance Code, in the Circuit Court of the county in which the cause of action arose. Any service of legal process against us may be made in any such action by service upon the Secretary of State of the State of Kentucky as provided in Ky. Rev. Stat. Ann. § 304.3- 230(5).

**Louisiana**

We shall be sued upon any cause of action arising in Louisiana under any contract issued by us as a surplus lines contract pursuant to Chapter 2, Part 1, Subpart O of the Louisiana Insurance Code, in the district court of the parish in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the Secretary of State of the State of Louisiana or some other person in his office whom he may designate during his absence. The secretary of state shall forthwith mail the documents of process served, or a true copy thereof, to the person designated in Section II of this Endorsement by registered or certified mail or by commercial courier as defined in La. Rev. Stat. Ann. tit. § 13:3204(D). We have forty (40) days from the date of service upon the secretary of state within which to plead, answer, or otherwise defend the action. Upon service of process upon the secretary of state in accordance with this provision, the court shall be deemed to have jurisdiction in personam over us.

FILED DATE: 1/28/2026 10:18 AM 2026CH00820

**Maryland**
We hereby appoint the Maryland Insurance Commissioner as agent for the acceptance of service of process in Maryland.

**Michigan**
We hereby appoint the Michigan Insurance Commissioner as our resident agent for the purposes of service of process in Michigan.

**Pennsylvania**
We may be sued upon any cause of action arising in the Commonwealth of Pennsylvania under any surplus lines insurance contract made by us or evidence of such insurance issued or delivered by a surplus lines licensee. Any service of process on us shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). By accepting surplus lines insurance we are deemed thereby to have subjected ourselves to accepting service of process under 42 Pa.C.S. Ch. 53 Subch. B.

**South Dakota**
Any cause of action against us arising in South Dakota on a surplus line contract shall be brought in the circuit court for the county in which the cause of action arose. Service of legal process against us may be made in any such action by service upon the South Dakota director of the Division of Insurance as provided in S.D. Codified Laws § 58-6-39. The director shall forthwith mail a copy of the process served, to the person designated in Section II of this Endorsement, by prepaid registered or certified mail with return receipt requested. We shall have thirty days from the date of service upon the director within which to plead, answer, or otherwise defend the action. Upon service of process upon the director in accordance with S.D. Codified Laws § 58-6-38, the court shall be deemed to have jurisdiction in personam over us. By issuing a surplus lines policy, we are deemed thereby to have authorized service of process against us in the manner and to the effect as provided in S.D. Codified Laws § 58-6-37.

**Tennessee**
We may be sued upon any cause of action arising in Tennessee under any surplus lines insurance contract issued by us or certificate, cover note or other confirmation of the insurance issued by the surplus lines agent, pursuant to the same procedure as is provided for unauthorized insurers in Title 56, Chapter 2, Part 6 and Tenn. Code Ann. § 56-7-105(b) of the of Tennessee Insurance Law. By assuming a surplus lines insurance risk pursuant to Title 56, Chapter 14, Part 1, we are deemed to have subjected ourselves to the requirements of Tenn. Code Ann. § 56-14-112.

ALL OTHER TERMS, CONDITIONS, PROVISIONS AND EXCLUSIONS OF THIS POLICY REMAIN THE SAME.

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

**Corporate Creations Addresses:**

**ALABAMA**
Corporate Creations Network Inc.
4000 Eagle Point Corporate Drive
Birmingham, AL 35242
Shelby County
(205) 533-8844

**ALASKA***
Corporate Creations Network Inc.
3085 Mountainwood Circle
Juneau, AK 99801
Juneau County

AK ENTITY NUMBER: 74930F

**ARIZONA**
Corporate Creations Network Inc.
3260 N. Hayden Road #210
Scottsdale, AZ 85251
Maricopa County
(480) 993-2162

**ARKANSAS**
Corporate Creations Network Inc.
609 SW 8th Street #600
Bentonville, AR 72712
Benton County
(501) 255-0832
FILING NUMBER: 100216943

**CALIFORNIA**
Corporate Creations Network Inc. [C2250455]
4640 Admiralty Way, 5th Floor
Marina del Rey, CA 90292
Los Angeles County
(707) 320-0504
ENTITY NUMBER: C2250455

**COLORADO**
Corporate Creations Network Inc.
155 E. Boardwalk #490
Fort Collins, CO 80525
Larimer County
(303) 325-5189

**CONNECTICUT**
Corporate Creations Network Inc.
6 Landmark Square, 4th Floor
Stamford, CT 06901
Fairfield County
(203) 649-6438

**DELAWARE***
Corporate Creations Network Inc.
3411 Silverside Road Tatnall Building #104
Wilmington, DE 19810
New Castle County
(302) 351-3367
FILE NUMBER: 3290251

**DISTRICT OF COLUMBIA***
Corporate Creations Network Inc.
1629 K Street, NW, #300
Washington, DC 20006

**FLORIDA**
Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach, FL 33408

FILED DATE: 1/28/2026 10:18 AM   2026CH00820

District of Columbia County
(202) 558-5443

Palm Beach County
(561) 694-8107

**GEORGIA**
Corporate Creations Network Inc.
2985 Gordy Parkway, 1st Floor
Marietta, GA 30066
Cobb County
(404) 806-7387

**HAWAII**
Corporate Creations Network Inc.
1136 Union Mall #301
Honolulu, HI 96813
Honolulu County

**IDAHO**
Corporate Creations Network Inc.
950 W. Bannock Street #1100
Boise, ID 83702
Ada County
(208) 475-4283
FILING NUMBER: C141604

**ILLINOIS\***
Corporate Creations Network Inc.
350 S. Northwest Highway #300
Park Ridge, IL 60068
Cook County
(773) 649-9240

**INDIANA\***
Corporate Creations Network Inc.
8520 Allison Pointe Blvd #220
Indianapolis, IN 46250
Marion County
(574) 968-7009

**IOWA\***
Corporate Creations Network Inc.
3106 Ingersoll Avenue
Des Moines, IA 50312
Polk County
(515) 309-6947

**KANSAS**
Corporate Creations Network Inc.
4601 E. Douglas Avenue #700
Wichita, KS 67218
Sedgwick County
(785) 200-8393
ID NUMBER: 3281045

**KENTUCKY**
Corporate Creations Network Inc.
101 North Seventh Street
Louisville, KY 40202
Jefferson County
(502) 561-3437
ORGANIZATION NUMBER: 0526847

**LOUISIANA**
Corporate Creations Network Inc.
1070-B West Causeway Approach
Mandeville, LA 70471
St. Tammany Parish
(504) 265-1236

**MAINE DOMESTIC CORP\***
Debra Bilodeau
128 State St., #3
Augusta, ME 04330
Kennebec County
(207) 248-6235
CRA NUMBER: P10117